RICHARD A. ERGO (# 110487)
WILLIAM T. NAGLE (# 180162)
ANI N. KELEDJIAN (# 319811)
Bowles & Verna LLP
2121 N. California Blvd., Suite 875
Walnut Creek, California 94596
Telephone: (925) 935-3300
Facsimile:  (925) 935-0371
Email: rergo@bowlesverna.com
         wnagle@bowlesverna.com
         akeledjian@bowlesverna.com

Attorneys for Defendant
GIGSMART, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN JOHNSON and CHRISTI McCRACKEN, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIGSMART, INC., a Delaware corporation; Does 1-100, inclusive,<br><br>Defendants. | Case No.:<br><br>(Alameda County Sup. Ct. Case No. 24CV066123)<br><br>**NOTICE OF REMOVAL OF ACTION** |

**TO THE CLERK FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant GIGSMART, INC. by and through its attorneys of record hereby remove this case to the United States District Court, Northern District of California, pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446 the State Court action described below.

## I.    JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332, and this action may be removed to this Court by Defendant GigSmart, Inc. ("GigSmart") because (1) there is complete diversity of citizenship between Plaintiffs and GigSmart; and (2) the amount in

1  controversy exceeds $75,000, exclusive of interest and costs.

2      2.      Because the state court action is pending in the Superior Court of California, County of

3  Alameda, removal of the state court action to this District Court is proper under 28 U.S.C. §§1441(a)

4  and 1446(a).

5      3.      Removal to and venue in this District are proper under 28 US.C. §1391(b)(2) because

6  Plaintiffs filed the present case in Alameda County Superior Court and because they allege that

7  GigSmart employs workers in Alameda County.

8  **II.     PLEADINGS AND FILINGS**

9      4.      This action was filed in the Superior Court of the State of California in and for the

10  County of Alameda, entitled *Susan Johnson, et al. v. GigSmart, Inc.* Case No. 24CV066123.

11      5.      The action is an alleged class action employment matter and an alleged Private Attorney

12  General Act ("PAGA") claim.

13      6.      This action commenced on March 1, 2024.

14      7.      A true and correct copy of the Complaint is attached hereto as **Exhibit A** (the

15  "Complaint"). True and correct copies of the pleadings, papers filed in this case, and a copy of the

16  court's docket are attached hereto as **Exhibit B**.

17  **III.    GIGSMART'S REMOVAL ATTEMPT IS TIMELY AND PROPER**

18      9.      Defendant GigSmart was served with Plaintiffs' Summons and Complaint on March 27,

19  2023. This Notice of Removal was filed and served within thirty (30) days of the date of service.

20  Therefore, GigSmart's Notice of Removal is timely and proper under 28 U.S.C. §1446(b) and *Murphy*

21  *Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-348 (1999).

22  **IV.    DIVERSITY JURISDICTION**

23      10.     This is a civil action over which this Court has original jurisdiction under 28 U.S.C.

24  §1332(a), and which may be removed to this Court under 28 U.S.C. §1441(a), in that it is a civil action

25  between citizens of different states and the matter in controversy exceeds to sum or value of $75,000,

26  exclusive of interest and costs.

27      11.     <u>Plaintiffs' Citizenship</u>. Plaintiffs allege that they are California residents, which creates

28  a rebuttable presumption of citizenship. (See *Ex. A*, ¶¶7-8). *Long v. Empire Today, LLC*, 2014 U.S.

1    Dist. LEXIS 617, *4 (C.D. Cal. Jan. 3, 2014) (noting that "[a] person's residence can be prima facie

2    evidence of citizenship").

3        12.    Defendant GigSmart's Citizenship: Defendant GigSmart is headquartered in Denver,

4    Colorado, and incorporated in the State of Delaware. (See *Ex. A*, ¶9). Therefore, GigSmart is not a

5    citizen of California.

6            a.    A corporation's principal place of business is where "the corporation's high

7    level officers direct, control, and coordinate the corporation's activities. Lower federal courts have

8    often metaphorically called that place the corporation's 'nerve center.' … [T]he 'nerve center' will

9    typically be found at a corporation's headquarters." *Hertz Corp. v. Friend* (2010) 130 S. Ct. 1181,

10   1186 (internal citations omitted).

11           b.    GigSmart maintains its corporate headquarters in Denver, Colorado. The

12   majority of its executive officers and directors, including the chief executive officer, the chief financial

13   officer, and many other executive officers and employees, work and direct GigSmart's operations from

14   the corporate headquarters in Colorado.

15           c.    Accordingly, for purposes of jurisdiction under 28 U.S.C. §1332(a), GigSmart is

16   a citizen of the State of Colorado and a citizen of the State of Delaware. *See* 28 U.S.C. §1332(c)(1).

17   GigSmart is not now, and has never been, a citizen of the State of California.

18       13.    Pursuant to 28 U.S.C. §1441(a), "[f]or purposes of removal…the citizenship of

19   defendants sued under fictitious names shall be disregarded." Thus, the fictitious "Does 1 to 100" are

20   disregarded for determining diversity jurisdiction. There is *complete* diversity between the parties for

21   purposes of removal.

22   **V.    AMOUNT IN CONTROVERSY**

23       14.    The required threshold amount in controversy is clearly met with respect to Plaintiffs'

24   claims against GigSmart. In measuring the amount in controversy for purposes of diversity

25   jurisdiction, "a court must assume that the allegations of the complaint are true and assume that a jury

26   will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v.

27   Morgan Stanley Dean Witter,* 1969 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The potential liability

28   against GigSmart exceeds $75,000.

15.     A removing defendant's notice of removal must contain only "a short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014). The "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554. "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." Id., quoting H.R. Rep. No. 112-10, p. 16 (2011). Indeed, "[a] removing party need not show that the plaintiff will prevail or collect more than $75,000 if he does. The burden, rather, is to show what the plaintiff hopes to get out of the litigation, if this exceeds the jurisdictional amount, then the case proceeds in federal court unless a rule of law will keep the award under the threshold." *Simmons v. PCR Technology,* 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

16.     Where, as here, Plaintiffs have not plead in the Complaint the amount of damages that they seek, the Court must look beyond the Complaint to determine whether the lawsuit meets the jurisdictional requirement. *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 998 & n.4 (9th Cir. 2007); *Abrego Abrego v. The Dow Chem. Co.*, 443 F. 3d 676, 689 (9th Cir. 2006). In such cases, the defendant seeking removal must prove by a preponderance of the evidence that it has met the amount in controversy requirement. 28 U.S.C. §1446(c)(2); *Lowdermilk*, 479 F.3d at 998; *Abrego Abrego*, 443 F. 3d at 683. That is, the defendant must provide evidence that it is more likely than not that the amount in controversy meets the federal jurisdiction amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F. 3d 398, 404 (9th Cir. 1996). The burden "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1204-1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Market Corp.*, 408 F. Supp. 982, 986 (S.D. Cal. 2005)).

17.     Where separate and distinct claims against several individuals are joined, the jurisdictional amount must be present as to each defendant, and claims cannot be aggregated to make up the jurisdictional amount. *Calvert Distillers Corp. v. Rosen*, 115 F. Supp. 146, 147 (D. Ill. 1953).

18.     While GigSmart denies Plaintiffs' factual allegations and further denies that Plaintiffs suffered any damages or are entitled to any relief whatsoever, Plaintiffs' allegations have put into

controversy an amount that is "more likely than not" in excess of $75,000, exclusive of interest and costs.

19. **Misclassification Penalties.** Plaintiffs allege that Defendant misclassified them in violation of Labor Code §226.8, which makes it unlawful for an employer to: (1) willfully misclassify an individual as an independent contractor; and (2) charge fees or make any deductions from compensation for any purpose, including goods, materials, space rental, services, licenses, repairs, maintenance, and fines, when such fees or deductions would have been impermissible had the individual not been misclassified. *See* Complaint, **Ex. A**, ¶¶3, 91.f.

a.   Pursuant to Labor Code §226.8(c), Plaintiffs seek penalties in the amount of $25,000 for each violation enumerated in §226.8(a)(1) and (a)(2).

b.   At a minimum and based on Plaintiffs' allegations, GigSmart allegedly owes at least **$50,000** to each Plaintiff in penalties under this statutory provision alone.

20. **Failure to Reimburse Expenses [Labor Code §2802]**. Plaintiffs allege that GigSmart failed to reimburse expenses in violation of Labor Code §2802. *See* Complaint, **Ex. A**, ¶18. Specifically, Plaintiffs allege that GigSmart failed to reimburse expenses including vehicle usage, related expenses, uniforms, "cell phone and related data expenses."

a.   Labor Code §2802 mandates that employers pay all reasonable business expenses of their employees. Claims under Section 2802 are subject to a four-year statute of limitations. Cal. Code of Civ. Proc. §338(c); *Cortez v. Purolator Air Filtration Products*, 23 Cal. 4th 163, 177-180.

b.   Plaintiffs do not specify the monthly cost of their cell phone bills in the Complaint. Using a conservative estimate of the cost of Plaintiffs' monthly cell phone bills in the amount of $65[1] and assuming 25% of the total cell phone usage was attributable to the performance of their duties with GigSmart, Plaintiffs Susan Johnson's expense reimbursement claim would place **$260** in controversy. ($65 monthly bill x 25% usage x 16 months worked = $260); Plaintiff Christi McCracken's expense reimbursement claim would place **$65** in controversy ($65 monthly bill x 25%

---

[1] This amount was based on NY Times/Wirecutter Article entitled "The Best Cell Phone Plans," dated November 29, 2023, using AT&T's "Unlimited Starter" single phone line with unlimited talk and text and 3GB of data for $65 per month: https://www.nytimes.com/wirecutter/reviews/best-wireless-carrier/

1   usage x 4 months worked = $65).

2          c.      Plaintiffs do not allege any specific information about vehicle usage or related

3   expenses. GigSmart is not aware of any uniform requirement for any gigs Plaintiffs performed.

4          21.    **Unlawful Deductions from Wages [Labor Code §221-223]**. Plaintiffs allege that

5   GigSmart made unlawful deductions from Plaintiffs' wages. Specifically, Plaintiffs allege that

6   "GigSmart charges Workers a 3% fee should they want their wages paid faster." *See* Complaint, **Ex. A**,

7   ¶19.

8          a.      Labor Code §221 prohibits employers from collecting or receiving any portion

9   of an employee's wages.

10         b.      Labor Code §225.5 sets forth penalties for "every person who unlawfully

11  withholds wages due any employee." The penalty for the first violation is $100. For each subsequent

12  violation, or any willful or intentional violation, the penalty is $200 plus 25% of the amount unlawfully

13  withheld.

14         c.      Plaintiffs allege that GigSmart would charge a 3% fee to receive their wages

15  faster. Plaintiffs do not allege how often they elected to receive their wages faster.

16                 *i.*     Plaintiff Susan Johnson worked approximately 230 gigs between July

17  2022 and February 2024; the total hours worked is approximately 1361.46 and the average pay during

18  that time period was $19.45.

19                 *ii.*    Plaintiff Susan Johnson elected to deposit her earnings from her

20  GigSmart Worker Wallet into an external debit card faster than standard transfer times a total of 204

21  instances; the total fee charged for these transfers was $757.94. The penalty for the first violation is

22  $100 and $40,600 total for the remaining gigs. In addition, should she prevail in her claim, Plaintiff

23  Susan Johnson would be entitled to receive 25% of the withheld amount: $757.94 x 25% = $189.48

24  penalty payable to Plaintiff Susan Johnson.

25                 *iii.*   In sum, if she prevails on her claim and assuming the foregoing is

26  representative of the wages allegedly withheld by GigSmart, then Plaintiff Susan Johnson would be

27  entitled to approximately **$40,889.48**.

28                 *iv.*    Plaintiff Christi McCracken worked approximately 27 gigs between

Bowles & Verna LLP
2121 N. California
Suite 875
Walnut Creek 94596

August 2022 and November 2022; the total hours worked is approximately 195.7 and the average pay during that time period was $17.61.

    *v.*  Plaintiff Christi McCracken elected to deposit her earnings from her GigSmart Worker Wallet into an external debit card faster than standard transfer times a total of 22 instances; the total fee charged for these transfers was $86.04. The penalty for the first violation is $100 and $4,200 total for the remaining gigs. In addition, should she prevail in her claim, Plaintiff Christi McCracken would be entitled to receive 25% of the withheld amount $86.04 x 25% = $21.51 penalty payable to Plaintiff Christi McCracken.

    *vi.*  In sum, if she prevails on her claim and assuming the foregoing is representative of the wages allegedly withheld by GigSmart, then Plaintiff Christi McCracken would be entitled to approximately **$4,321.51**.

  22. **<u>Failure to Provide Accurate Wage Statements [Labor Code §226]</u>**. Plaintiffs allege that GigSmart failed to provide a compliant wage statement to its workers, pursuant to Labor Code §226. *See* Complaint, **Ex. A**, ¶20.

    a.  Labor Code §226 requires a wage statement be provided to an employee either semimonthly or at the time of each payment of wages. According to GigSmart's terms and conditions, a worker will receive their payment as soon as the gig is complete, and the Requester approves the worker's timesheet. Then, the exact amount of time the Requester approves, and the payment amount is reflected in a shift receipt, available to each worker through the GigSmart app. The funds from each gig are then available in the "Worker Wallet." Workers can then transfer the funds via a free standard transfer or a paid rapid transfer to a debit card or bank account of their choosing.

    b.  Pursuant to Labor Code §226.3, if Plaintiffs should prevail on their claim that Defendant is found to have failed to provide Plaintiffs a wage statement as required in §226(a), Defendant would "be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1000) per employee for each violation in a subsequent citation."

    *i.*  Plaintiff Susan Johnson worked approximately 230 gigs between July 2022 and February 2024. Based on the foregoing payment method, Plaintiff Susan Johnson would have

1 received her gig payment after each completed gig. Thus, should Plaintiff Susan Johnson prevail in her

2 claim, then the penalties for failure to provide wage statements would be approximately **$229,250** (1st

3 violation = $250; each subsequent violation: 229 x $1,000 = $229,000).

4          *ii.*      Plaintiff Christi McCracken worked approximately 27 gigs between

5 August 2022 and November 2022. Based on the foregoing payment method, Plaintiff Christi

6 McCracken would have received her gig payment after each completed gig. Thus, should Plaintiff

7 Christi McCracken prevail in her claim, then the penalties for failure to provide wage statements would

8 be approximately **$26,250** (1st violation = $250; each subsequent violation: 26 x $1,000 = $26,000).

9      23.     **Failure to Pay Overtime [Labor Code §510]**. Plaintiffs allege that Defendant has

10 failed to pay overtime to its workers, pursuant to Labor Code §510. *See* Complaint, **Ex. A**, ¶¶20, 51.

11          a.      Labor Code §510 defines "day's work" as eight hours of labor and "[a]ny work

12 in excess of eight hours in one day and any work in excess of 40 hours in any one workweek…shall be

13 compensated at a rate of no less than one and one-half times the regular rate of pay for an employee."

14          b.      An employee who does not receive overtime pay when they were entitled to

15 may recover in a civil action the unpaid balance of the full amount of the overtime compensation, plus

16 interest, reasonably attorney's fees and costs. Labor Code §1194.

17          c.   Plaintiffs do not specifically allege when or how often they worked overtime.

18          *i.*      Based on GigSmart's data, Plaintiff Susan Johnson worked over 40

19 hours in a given week at least 12 times between January 2023 and January 2024. The excess hours

20 worked during those 12 weeks is equal to 93.80 hours. Plaintiff Susan Johnson's average hourly rate

21 paid was $19.45; the overtime rate would be $29.18. Thus, should she prevail in her claim for unpaid

22 overtime, GigSmart would be liable for at least **$2,737.08** for unpaid overtime to Plaintiff Susan

23 Johnson.

24          *ii.*      Based on GigSmart's data, Plaintiff Christi McCracken never worked

25 over 40 hours in any given week. Therefore, Plaintiff Christi McCracken cannot make a claim for

26 unpaid overtime.

27      24.     **Failure to Provide Meal Periods [Labor Code §226.7]**. Plaintiffs allege that

28 GigSmart failed to provide meal periods to its workers, pursuant to Labor Code §§226.7 and 512. *See*

Complaint, **Ex. A**, ¶¶20, 55-57.

a.      Labor Code §512 requires an employer to provide a 30-minute meal period to each employee who has worked more than five hours in any given day; an employee would be entitled to a second 30-minute meal period if the employee works more than 10 hours per day.

b.      If an employer fails to provide a meal period to an employee who is entitled, then the employee could recover a premium payment equal to one hour of pay for each meal period that was not provided. Labor Code §226.7; *Brinker v. Sup. Ct.*, 53 Cal. 4th 1004, 1039 (2012).

c.      Plaintiffs do not specifically allege how many times they worked over 5 hours or 10 hours per day. However, Plaintiffs do allege that GigSmart "has no meal or rest policies", "do not record when breaks start or stop", or "provide for uninterrupted meal periods for Workers or make any effort to relieve them of all duties." Finally, Plaintiffs allege that GigSmart does not pay premium wages in lieu of these meal periods and workers have not waived their entitlement to the meal breaks. *See* Complaint, **Ex. A**, ¶56-57.

*i.*      Assuming Plaintiff Susan Johnson did not take any meal breaks during the entire time she worked gigs through GigSmart, then Plaintiff would be entitled to one hour of premium payment for each day she worked more than 5 hours per gig. Of the 46 weeks total that she worked gigs through GigSmart, Plaintiff Susan Johnson worked on average, over 5 hours per gig for approximately 156 gigs. As set forth above, the average hourly rate paid to Plaintiff was $19.45. Thus, should she prevail in her claims, Plaintiff Susan Johnson would be entitled to approximately **$3,034.20** in premium payments (156 gigs x $19.45 = $3,034.20).

*ii.*      Assuming Plaintiff Christi McCracken did not take any meal breaks during the entire time she worked gigs through GigSmart, then Plaintiff would be entitled to one hour of premium payment for each day she worked more than 5 hours per gig. Plaintiff Christi McCracken worked, on average, over 5 hours for all 27 gigs she worked through GigSmart. As set forth above, the average hourly rate paid to Plaintiff was $17.61. Thus should she prevail in her claims, Plaintiff Christi McCracken would be entitled to approximately **$475.47** in premium payments (27 gigs x $17.61 = $475.47).

25.      **Failure to Provide Rest Breaks [Labor Code §226.7].** Plaintiffs allege that GigSmart

1 failed to provide rest breaks to its workers, pursuant to Labor Code §§226.7, 226.2, and the Industrial

2 Welfare Commission ("IWC") Wage Orders. *See* Complaint, **Ex. A**, ¶¶20, 61-62.

3    a.    Under the IWC Wage Orders, an employer is required to provide a 10-minute

4 rest period for every 4 hours worked; a rest period is not required for total daily work less than 3.5

5 hours. Failure to provide this rest period results in one additional hour of pay for each rest period not

6 provided. Labor Code §226.7.

7    b.    Once again, Plaintiffs allege that GigSmart's policies "fail to provide for rest

8 breaks or, to the extent ever taken, pay Workers for rest break time." *See* Complaint, **Ex. A**, ¶62.

9    *i.*    Assuming Plaintiff Susan Johnson never took any rest periods during the

10 entire time they worked gigs through GigSmart, then she would be entitled to one additional hour of

11 premium pay for each missed rest period per gig. Of the 230 gigs worked by Plaintiff Susan Johnson,

12 only one gig was less then 3.5 hours. Moreover, Plaintiff Susan Johnson worked on average 5.9 hours

13 per gig, thereby entitling her to at least one break per gig. As set forth above, the average hourly rate of

14 pay for Plaintiff Susan Johnson was $19.45. Thus, should she prevail in her claims, Plaintiff Susan

15 Johnson would be entitled to, at a minimum, **$4,473.50** in premium payments (230 gigs x $19.45 =

16 $4,473.50).

17    *ii.*    Assuming Plaintiff Christi McCracken never took any rest periods

18 during the entire time they worked gigs through GigSmart, then she would be entitled to one additional

19 hour of premium pay for each missed rest period per gig. All 27 gigs worked by Plaintiff Christi

20 McCracken were over 4 hours. Moreover, Plaintiff Christi McCracken worked on average 7.25 hours

21 per gig, thereby entitling her to at least one break per gig. As set forth above, the average hourly rate of

22 pay for Plaintiff Susan Johnson was $17.61. Thus, should she prevail in her claims, Plaintiff Susan

23 Johnson would be entitled to, at a minimum, **$475.47** in premium payments (27 gigs x $17.61 =

24 $475.47).

25    26.    **Failure to Pay Wages When Due [Labor Code §201-203].** Plaintiffs allege that

26 GigSmart failed to pay wages when they were due, pursuant to Labor Code §§201-203. *See* Complaint,

27 **Ex. A**, ¶¶20, 66-67. Specifically, Plaintiffs allege that the aforementioned unpaid overtime, unpaid

28 meal and rest breaks, and illegal deductions from wages were not paid at termination.

Bowles & Verna LLP
2121 N. California
Suite 875
Walnut Creek 94596

a. Labor Code §203 imposes a penalty on an employer who "willfully fails to pay…any wages of an employee who is discharged or who quits" at the same rate until paid or up to 30 days. *See, e.g., Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCX, 2015 WL 2452755, at *6 (C.D. Cal. May 21, 2015) ("Since it is reasonable to assume a 100% violation rate for the rest break claim, then it is reasonable to further assume that 100% of the former employees would have had those unpaid rest break wages unlawfully withheld after their employment ended and still not paid up to the maximum 30-day period under the statute.")

b. Plaintiffs allege that GigSmart "failed to pay the above wages pursuant to its standard policies and procedures not to provide employment protections to Workers." *See* Complaint, **Ex. A**, ¶67.

i. Since Plaintiff Susan Johnson did not work on a set schedule, working multiple gigs on some days and no gigs on other days, it is difficult to calculate the actual daily rate. Based on the total compensation divided by the total number of gigs worked, Plaintiff Susan Johnson's average daily rate was $115.13 ($26,480.33/230 = $115.13). Thus, should she prevail on her claims, Plaintiff would be entitled to, at a minimum, **$3,453.90** for GigSmart's failure to timely pay wages.

ii. Since Plaintiff Christi McCracken did not work on a set schedule, working multiple gigs on some days and no gigs on other days, it is difficult to calculate the actual daily rate. Based on the total compensation divided by the total number of gigs worked, Plaintiff Christi McCracken's average daily rate was $127.65 ($3,446.54/27 = $127.65). Thus, should she prevail on her claims, Plaintiff would be entitled to, at a minimum, **$3,829.50** for GigSmart's failure to timely pay wages.

27. **Plaintiffs' Claim for Attorneys' Fees.** Plaintiffs seek to recover attorneys' fees. *See* Complaint, **Ex. A**, ¶¶42, 45, 47, 52, 58, 63, 68, 72, 78, 89, 94, and Prayer for Relief, ¶10. Courts have held that an award of attorneys' fees, if such fees are authorized under applicable law, may be considered for purposes of calculating the amount in controversy. *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a *reasonable estimate of fees likely to be incurred to resolution* is party of the benefit permissibly sought by the plaintiff and thus contributes to the amount in

1  controversy.") (Emphasis added); *Galt G/S v. JSS Scandinavia,* 142 F. 3d 1150, 1155-56 (9th Cir.

2  1998) ("We hold that where an underlying statute authorized an award of attorneys' fees, either with

3  mandatory or discretionary language, such fees may be included in the amount in controversy.");

4  *Guglielmino v. McKee Foods Corp.*, 506 F. 3d 696, 698 (9th Cir. 2007) (finding that attorneys' fees

5  are included in the calculation of the amount in controversy under 28 U.S.C. §1332(a)); *Hurd v.*

6  *American Income Life Insurance*, 2013 WL 5575073 (C.D. Cal. Oct. 13, 2013) (allowing attorney's

7  fees as part of the amount in controversy where authorized by statute or contract); *Melendez v. HMS*

8  *Host Family Restaurants, Inc.*, 2011 WL 3760058, at *4 (C.D. Cal. Aug. 25, 2011) (same).

9          a.    When calculating attorneys' fees for purposes of removal, the amount is not

10  limited to the fees incurred as of the time of removal but must include those future attorneys' fees that

11  would reasonably accrue through the time the action is resolved. *Fritsch v. Swift Transp. Co. of*

12  *Arizona, LLC,* 899 F. 3d 785, 794 (9th Cir. 2018); see also *Chavez v. JP Morgan Chase & Co.*, 888 F.

13  3d 413, 414-415 (9th Cir. 2018); *Lucas v. Michael Kors (USA) Inc.*, 2018 U.S. Dist. LEXIS 78510, at

14  *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount

15  in controversy.").

16          b.    The reasonable estimate of attorneys' fees likely to be incurred through

17  resolution of a case may be based upon fee awards in similar cases, plaintiff's counsel's hourly rate,

18  and the number of hours counsel would likely spend on the case. *See Brady*, 243 F. Supp. 2d at 1011;

19  *see also Lyon v. W.W. Grainger Inc.*, 2010 WL 1753194, at *5 (N.D. Cal. Apr. 29, 2010)

20  ("Defendant's use of similar cases to estimate the cost of attorney's fees is sufficient to establish that

21  its estimate is more likely than not correct."). "Courts in this circuit have held that, for purposes of

22  calculating the amount in controversy in a wage-and-hour class action, removing defendants can

23  reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five

24  percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS

25  275, at *23 (N.D. Cal. Jan. 2, 2014); *see also, Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK

26  (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include

27  in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of

28  the substantive claims."); *Herrera v. Carmax Auto Superstores Cal., LLC*, 2014 U.S. Dist. LEXIS

188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available.").

      c.     In the present case, recovery of attorneys' fees is authorized by statute for an employee who prevails on a claim for alleged violations of Labor Code §§201-203, 221-223, 226, 510, 2802,1197, under Business & Professions Code section 17200, *et seq.*, and Private Attorney General Act ("PAGA"; Labor Code §2698, *et seq.*) all of which are statutory violations that Plaintiffs have alleged in their Complaint.

      *i.*  The projected damages of Plaintiff Susan Johnson's claims may surpass $334,098. Twenty-five percent of the projected damages is $83,524.54, representing attorneys' fees incurred in total by Plaintiffs' counsel.

      *ii.*  The projected damages of Plaintiff Christi McCracken's claims may surpass $85,417. Twenty-five percent of the projected damages is $21,354.24, representing attorneys' fees incurred in total by Plaintiffs' counsel.

    28.    Therefore, Plaintiffs claims meet the amount in controversy requirement for federal jurisdiction as set forth below:

| Labor Code Violation | Amount in Controversy As to Pl. Susan Johnson | Amount in Controversy As to Pl. Christi McCracken |
|---|---|---|
| Misclassification Penalties (Labor Code §226.8) | $50,000 | $50,000 |
| Failure to Reimburse Expenses (Labor Code §2802) | $260 | $65 |
| Unlawful Deductions from Wages (Labor Code §§221-223) | $40,889.48 | $4,321.51 |
| Failure to Provide Accurate Wage Statements (Labor Code §226) | $229,250 | $26,250 |
| Failure to Pay Overtime (Labor Code §510) | $2,737.08 | $0 |
| Failure to Provide Meal Periods (Labor Code §§226.7, 512) | $3,034.20 | $475.47 |
| Failure to Provide Rest Periods (Labor Code §226.2, 226.7) | $4,473.50 | $475.47 |
| Failure to Pay Wages When Due (Labor Code §§201-203) | $3,453.90 | $3,829.50 |
| **Subtotal:** | **$334,098** | **$85,417** |
| Plaintiffs' Attorneys' Fees (25% of total damages) | $83,524.54 | $21,354.24 |
| **TOTAL:** | **$417,622.70** | **$106,771.19** |

Bowles & Verna LLP
2121 N. California
Suite 875
Walnut Creek 94596

13

29.     Moreover, Plaintiffs seek for each alleged Labor Code violation, on behalf of themselves and the Class, damages, penalties for past violations, unpaid overtime, unpaid wages, waiting time penalties, liquidated damages, interest, applicable penalties, attorneys' fees and costs. In addition, Plaintiffs seek to recover penalties under PAGA and all attorney's fees and costs associated with PAGA violations. These additional categories of damages would necessarily increase Plaintiffs' damages, unquestionably meeting the amount in controversy requirement necessary for federal jurisdiction.

30.     Given the foregoing, Plaintiffs' claims exceed the amount in controversy requirements and this Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. §§1332. Accordingly, removal is proper pursuant to 28 U.S.C. §1441.

31.     This Notice of Removal is filed in the District Court of the United States for the district and division in which the case is pending. 28 U.S.C §1446(a).

32.     Concurrently with the filing of this Notice, Defendant has provided written notice of removal to all parties and has filed a copy of this Notice of Removal with the Clerk of the Alameda County Superior Court.

33.     Defendant has good and sufficient defenses to this action and does not waive any defenses, jurisdictional or otherwise, by the filing of this notice.

34.     Based on the foregoing, Defendant removes this action from the Alameda County Superior Court to this Court, and requests that further proceedings be conducted in this Court as provided by law.

DATED: April 26, 2024                    BOWLES & VERNA LLP


                                         By /s/ *William Nagle*_____
                                             Richard A. Ergo
                                             William T. Nagle
                                             Ani N. Keledjian
                                             Attorneys for Defendant
                                             GigSmart, Inc.

# EXHIBIT A

**EXHIBIT A**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**03/01/2024 at 01:23:15 PM**
By: Damaree Franklin,
Deputy Clerk

1 | **NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
2 | Shaun Markley (SBN 291785)
Jordan Belcastro (SBN 339570)
3 | 225 Broadway, 19th Floor
San Diego, California 92101
4 | Tel: (619) 325-0492
Fax: (619) 325-0496
5 | Email: cnicholas@nicholaslaw.org
Email: smarkley@nicholaslaw.org
6 | Email: jbelcastro@nicholaslaw.org

7 | Attorneys for Plaintiffs SUSAN JOHNSON and CHRISTI MCCRACKEN,
individuals, on behalf of themselves and all others similarly situated

8 |

9 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10 | **IN AND FOR THE COUNTY OF ALAMEDA**

11 | SUSAN JOHNSON and CHRISTI
MCCRACKEN, individuals, on behalf of
12 | themselves and all others similarly situated,

Case No. **24CV066123**

**CLASS ACTION COMPLAINT FOR:**

13 | Plaintiffs,

**(1) FAILURE TO REIMBURSE EXPENSES [LAB. CODE, § 2802];**

14 | vs.

15 | GIGSMART, INC., a Delaware corporation;
and DOES 1 through 100, inclusive,

**(2) UNLAWFUL DEDUCTIONS FROM WAGES [LAB. CODE, §§ 221-223];**

16 |

Defendants.

**(3) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS [LAB. CODE, § 226];**

17 |

18 |

**(4) FAILURE TO PAY OVERTIME [LAB. CODE, § 510];**

19 |

20 |

**(5) FAILURE TO PROVIDE MEAL PERIODS [LAB. CODE, § 226.7];**

21 |

22 |

**(6) FAILURE TO PROVIDE REST BREAKS [LAB. CODE, § 226.7];**

23 |

**(7) FAILURE TO PAY WAGES WHEN DUE [LAB. CODE, §§ 201-203];**

24 |

25 |

**(8) FAILURE TO PAY MINIMUM WAGE [LAB. CODE, §§ 1194, 1194.2, 1197];**

26 |

**(9) UNFAIR BUSINESS PRACTICES [BUS. & PROF. CODE, § 17200 ET SEQ.].**

27 |

28 |

CLASS ACTION COMPLAINT

**REPRESENTATIVE ACTION FOR:**

**(10) CIVIL PENALTIES UNDER LABOR CODE'S PRIVAGE ATTORNEY GENERAL ACT ("PAGA") [LAB. CODE § 2698 ET SEQ.]**

**DEMAND FOR JURY TRIAL**

Plaintiffs SUSAN JOHNSON and CHRISTI MCCRACKEN ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Defendant GIGSMART, INC., a Delaware corporation ("GigSmart" or "Defendant"), and DOES 1 through 100, inclusive, and alleges on information and belief as follows:

## I.    INTRODUCTION

1.    Defendant GigSmart is a fast, low-cost staffing company that provides hourly workers to businesses. GigSmart advertises pre-vetted, reliable workers available at a moment's notice without the formality of interviews or traditional hiring models for companies in need of extra labor. So called "shift gigs" are carried out by relatively low-skilled workers for hourly pay (referred to as "Workers"). Among other industries, GigSmart offers its staffing services in the warehousing, construction, restaurant, landscaping, moving, delivery, and retail industries.

2.    Workers are a core component of Defendant's staffing company who must operate under the controls in place to satisfy GigSmart's customer base. Yet, Defendant claims they are not employees and instead "independent contractors."

3.    By refusing to recognize its Workers as employees, Defendant cheats these individuals out of protections provided by California labor laws such as reimbursement of business

expenses, wage deduction protection, accurate wage statements, overtime pay, meal and rest breaks, timely payment of wages, and payment of a minimum wage. Defendant's misclassification of its Workers also robs the State of important employee tax revenue and gives Defendant an undue advantage over law-abiding competitors who bear the necessary expenses associated with employing similar workers.

4.      This Class Action seeks recovery on behalf of Plaintiffs and other similarly situated Workers in California for violations of California's Labor Code and Industrial Welfare Commission Wage Orders ("Wage Orders") along with violations of California's Unfair Competition Law predicated upon violations of California's Labor Code and Wage Orders.

## II.    JURISDICTION & VENUE

5.      This Court has subject matter jurisdiction to hear this case because the damages and penalties sought herein resulting from Defendant's conduct exceeds the jurisdictional minimum of this Superior Court.

6.      Venue is proper pursuant to Code of Civil Procedure, sections 395 and 395.5, among other sections. Defendant employs workers in this County. Furthermore, the obligation to comply with the Labor Code for the group of workers relevant to this case and the resulting liability for misclassifying and denying Labor Code/Wage Order benefits to those workers arose in this County, among others.

## III.    PARTIES

7.      Ms. Johnson is and at all relevant times was a resident of Los Angeles, California. She formerly worked as a Worker for Defendant and was classified as an independent contractor.

8.      Ms. McCracken is and at all relevant times was a resident of Los Angeles, California. She formerly worked as a Worker for Defendant and was classified as an independent contractor.

9.      GigSmart, Inc. is a Delaware corporation with a principal business address at 999 18th Street, Suite 1750S, Denver, Colorado 80202.

10.     Plaintiffs do not know the true names and/or capacities, whether individual, partners, or corporate, of Defendants sued herein as DOES 1 through 100, inclusive, and for that reason sues said Defendants under fictitious names. Plaintiffs will seek leave to amend this Complaint when the

1  true names and capacities of these Defendants have been ascertained. Plaintiffs are informed and

2  believe and thereon allege that these Defendants are responsible in whole or in part for Plaintiffs'

3  alleged damages.

4      11.    At all times mentioned, Defendants were the agents, alter egos, servants, joint

5  venturers, joint employers, or employees for each other. Defendants acted with the consent of the

6  other Co-Defendants and acted within the course, purpose, and scope of their agency, service, or

7  employment. All conduct was ratified by Defendants, and each of them.

8                  IV.    **GENERAL ALLEGATIONS**

9      A.    **GigSmart's Business Model**

10      12.    GigSmart was founded in 2016 and operates a staffing company which "allows

11  business  to  directly  access  on-demand  workers  for  short  and  long-term  jobs[.]"

12  https://gigsmart.com/about-us/. GigSmart is available in all 50 states across the United States.

13  https://help.gigsmart.com/what-cities-are-you-available-in-requesters.

14      13.    To book GigSmart's Workers, GigSmart's clients must first create an account with

15  GigSmart from their web browser or through the GigSmart app. The client then posts a gig to

16  GigSmart. Vetted Workers then accept the posted gig. https://help.gigsmart.com/what-is-gigsmart-

17  requesters. When GigSmart's clients pay GigSmart for its Workers' services, GigSmart retains

18  ~20% of the payment. GigSmart's clients are often in the warehousing, catering, restaurant, retail,

19  logistics, delivery, construction, landscaping, and facility services industries. https://gigsmart.com/.

20      14.    To fulfill its customers' staffing requests, GigSmart maintains a network over one

21  million Workers "across all industries and positions" with "experience aligned with [the client's]

22  specific needs." https://gigsmart.com/hire-workers/temporary-staffing/. Plaintiffs were two such

23  Workers.

24      15.    Needing to satisfy its customers and to provide the staffing services they want,

25  GigSmart retains and exercises a great deal of control over its Worker workforce. For example,

26  GigSmart sets start and stop times for work, requires location tracking and data-enabled smart

27  phones during work hours, punishes or terminates workers for not timely responding to potential gig

28

1  assignments, punishes or terminates workers for failing to show up for gig shifts once accepted, and

2  retaining discretion to not pay for shifts if the worker is late.

3      **B.    GigSmart Misclassified Drivers**

4      16.    Integral to Defendant's staffing business, Defendant utilizes the labor of Workers,

5  like Plaintiffs and the Class they seek to represent, to carry out gig services for GigSmart's third-

6  party customers. GigSmart labors Workers as "independent contractors." In short, these Workers

7  perform a central part of GigSmart's staffing business: the labor for GigSmart's customers for which

8  the customers contract with GigSmart to staff. The work of Workers is necessary to GigSmart's

9  staffing business and is continuously performed for GigSmart. Further, GigSmart holds itself out as

10  a staffing business. Workers are naturally an essential component of GigSmart's business model.

11      17.    GigSmart strictly controls and regulates Workers. Workers must follow the terms of

12  GigSmart's onerous Terms of Use along with other written instructions from GigSmart. Under these

13  operating requirements and standards, GigSmart exerts control and direction on Workers in

14  connection with the performance of their staffing services, both in contract and in fact. This control

15  and direction includes, but is not limited to, the following:

16      a.    Workers must download GigSmart's mobile application on iOS or Android.

17          They then must create a Worker Profile by adding their applicable positions

18          and qualifications, professional summary, education, work history and more.

19          Workers can then start receiving gig shifts.

20      b.    GigSmart also advises its Workers to complete a Worker profile. This

21          includes uploading a professional profile photo, telling potential hiring

22          managers about themselves in their biography section, updating the education

23          section in their Worker profile, and including any relevant work history.

24      c.    Workers must be at least 14 years of age to create an account with GigSmart.

25          Workers under 18 years of age need parental consent to sign up.

26      d.    To receive updates about new gigs and possible work, Workers must share

27          their location and allow GigSmart to monitor their location even when they

28

1               are not performing a gig shift. Should a Worker turn off location monitoring,

2               GigSmart will not notify the Worker of new gig shifts and they cannot work.

3      e.    When a Worker has an upcoming gig shift, GigSmart will send the worker a

4               Shift Confirmation SMS. The Worker must reply "Y" to the text message

5               before the deadline stated in the message. If a Worker fails to respond within

6               before the deadline, they will no longer be assigned to the gig shift.

7      f.     If a Worker is marked late for a shift, they will not be able to start their Shift

8               clock when they arrive on-site. GigSmart's clients can then start the Shift

9               clock for the Worker so they can get paid, or they can cancel the Worker's

10             shift without payment.

11    g.    GigSmart has the ability to cancel a Worker's shift. GigSmart can do so at its

12             customer's request, because the Worker failed to respond to the Shift

13             Confirmation SMS, because it failed to complete the Worker's background

14             check in time, or because it restricted the Worker's account.

15    h.    GigSmart offers "Verified Gigs." If a Worker is selected for a Verified Gig

16             then GigSmart runs their background check and/or motor vehicle records

17             check. The Worker must clear the checks in order to perform the gig.

18    i.     GigSmart permits its clients to edit gig shift start and end times at their

19             discretion. Workers receive payment for only 50% of the shift duration if: (1)

20             the client cancels a shift that was published ten or more hours before the shift

21             start time within ten hours of the start time; or (2) the client cancels a shift

22             that was published less than ten hours before the shift start time within one

23             hour of its time; or (3) the client cancels a shift after the Worker has been geo-

24             checked into the gig site.

25    j.     GigSmart clients can send home Workers within their first hour of work and

26             GigSmart will refund the client up to $30. Workers will receive no pay.

27    k.    GigSmart controls how Workers communicate with its clients. Workers

28             cannot contact GigSmart's clients until the worker is selected for a gig by the

client. After being selected for the gig, the Worker can message the client using GigSmart's in-app messaging feature.

l.    Workers must consent to and abide by a Terms of Use policy. GigSmart may ban Workers from using GigSmart should the Worker violate the Terms of Use.

m.    GigSmart may also limit, block, suspend, deactivate, or cancel a Worker's GigSmart account in its sole discretion, with or without cause, without or without prior notice, and at any time. This is at will employment.

n.    If GigSmart terminates a Worker's account, it may communicate to other users that the Worker's account was terminated and why it was terminated. Workers are not entitled to any payment for services cancelled or delayed as a result of their termination.

o.    Should a Worker be suspended, GigSmart prohibits them from applying for any gigs and all currently applied for gigs will be canceled.

p.    GigSmart may also terminate or suspend a Worker who provides what GigSmart deems, in its sole discretion, to be misleading information.

q.    Workers are prohibited from using GigSmart's Platform to solicit, advertise, or contact others for employment, contracting, or any other purpose without express written permission from GigSmart.

r.    GigSmart requires that Workers agree to not, and not permit or encourage other to, do any of the following in relation to GigSmart's Platform:

    i.    Ignore or violate any of the Conditions of Eligibility;

    ii.    Use, hack, modify, or change any user's account;

    iii.    Misrepresent yourself or the services you offer as a Worker, or otherwise misrepresent your identity, qualifications, profile, or "request;"

iv.  Post any content in any inappropriate manner or context, including categories or areas on the GigSmart Platform, ratings, or other information and data;

v.  Use an automated system to access GigSmart's Platform for any inappropriate purpose without GigSmart's prior written approval, specifically, but not limited to, robots, spiders, offline readers, or scrapers;

vi.  Duplicate or copy, or otherwise misuse or misappropriate, copyrighted, proprietary, or other Platform information and/or content for use on any third party site;

vii.  Misuse and/or disrupt the Platform by transmitting more request for Services messages in a given period of time and with such volume that a human being could not reasonably produce by using available industry web browsers;

viii.  Undertake any action, which in GigSmart's sole discretion unreasonably interferes with the Platform's infrastructure, its operations, its use by GigSmart, Workers, clients, and third parties;

ix.  Undertake any action that circumvents, disables, or otherwise interferes with the Platform's fee structure, billing procedures, or fees owed, or with the security features of the Platform, including, without limited to, the use of viruses or other technologies and processes that may damage GigSmart or users;

x.  Use the Platform in any way that violates any User's proprietary rights, including copyrights, trademarks, service marks, confidential information, rights to privacy, or other protected rights;

xi.  Misappropriate, accumulate, use, disclose, or publish any personally identifiable information and data for any reason, including, but not limited to, commercial solicitation purposes, names or other account

information from clients and users, or use the Platform itself for any reason not explicitly authorized by the Terms of Use;

xii.   Use another person's Account, misrepresent yourself or services offered through the Platform, misrepresent your identity or qualifications, or post content in any inappropriate category or areas on the Platform;

xiii.   Use any automated system, including but not limited to robots, spiders, offline readers, scrapers to access the Platform for any purpose without GigSmart's prior written approval;

xiv.   In any manual or automated manner copy copyrighted text, or otherwise misuse or misappropriate Platform information or Content, including but not limited to use on a mirrored, competitive, or third party site;

xv.   Undertake or perform any actions inappropriate or unlawful, including the submission of inappropriate or unlawful content, content which is defamatory, profane, harassing, hateful, or otherwise discriminatory in nature, or which sponsors, promotes, supports, or encourages inappropriate or illegal activity or conduct, which would be considered a criminal offense or which would give rise to civil liability or violate any federal, state, or local law or ordinance;

xvi.   Use a profile page or username to promote services not offered on or through GigSmart;

xvii.   Take any action that interferes with or undermines the usefulness of the rating system;

xviii.   Engage in any illegal or fraudulent conduct, including, but not limited to any action or conduct designed to interfere with the payment of fees through the Platform;

xix.    Defame abuse, harass, harm, stalk, threaten or otherwise violate the legal rights (including without limitation rights of privacy and publicity) of others;

xx.    Use the Platform or engage with other Users for any purpose that is in violation of federal, state, or local law or regulation, including without limitation, wage and hour and working condition laws and regulations;

xxi.    Upload files that contain software or other material that violates the rights of any third party, including, without limitation, intellectual property rights or rights of privacy or publicity;

xxii.    Upload files that contain viruses, Trojan horses, worms, time bombs, spiders, cancelbots, corrupted files, or any other similar software, malware or materials that may damage, interfere with, disrupt, impair, disable or otherwise overburden the operation of any device, computer system or network;

xxiii.    Take any action that would undermine any aspect of the Platform or use the Platform in any manner that could interfere with, disrupt, or inhibit other users from fully enjoying the Platform or that could damage, disable, overburden or impair the functioning of the Platform in any manner;

xxiv.    Impersonate another person or allow any other person or entity to use your username, password or membership;

xxv.    Post the same content repeatedly or spam;

xxvi.    Download any file posted by another user that you know, or reasonably should know, cannot be legally distributed through the Platform;

xxvii.    Access, download, or copy any information, content and/or materials from the Platform through artificial means (including

without limitation spiders, scrapers, hacking devices, computer programs, bots or other such means); and/or

xxviii.   Reproduce duplicate, copy, sell, resell or exploit any information, materials or content on the Platform.

**C.   GigSmart's Failure to Reimburse and Unlawful Deductions**

18.   By policy and practice, GigSmart does not reimburse Workers for necessary business expenses. These expenses include vehicle usage and related expenses and uniforms. Further, GigSmart does not reimburse Workers for cell phone and related data expenses, despite requiring Workers to use a cell phone in the course of completing their work.

19.   GigSmart also makes unlawful deductions from the wages of Workers. For example, GigSmart charges Workers a 3% fee should they want their wages paid faster. While GigSmart need not pay instantly, that it does pay instantly does not entitle it to deduct wages like a pay day lender.

**D.   GigSmart's Failure to Comply with Other California Wage and Hour Laws**

20.   As explained further below, as a result of its unlawful misclassification, GigSmart fails to provide Workers with a minimum wage for all hours worked and overtime pay where applicable, fails to make meal and rest breaks available to Workers, fails to pay Workers separately for res periods even if taken, fails to pay Workers all wages when due, and fails to provide Workers compliant wage statements in violation of California law.

## V.   <u>CLASS ALLEGATIONS</u>

21.   Pursuant to Code of Civil Procedure, section 382, Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other similarly situated members of the Class, defined below. This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of class actions.

22.   **Class Period.** The Class Period shall be defined as: from four years preceding the date that the first Complaint in this action is filed, until the full resolution of this action, plus any time that may be attributed to equitable or other forms of tolling.

23. Plaintiffs seek to represent the following Class of persons:

    a.    All individuals during the Class Period who personally performed gig services on the GigSmart Platform, i.e., a "Worker," in California and who were not classified as employees (the "Class").

    b.    This Class does not include Defendant, its officers, and/or its directors; the Judge to whom this case is assigned; or the Judge's immediate family or staff.

24. Plaintiffs reserve the right to amend the above Class and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability, among other reasons.

25. **Numerosity.** The potential members of the Class as defined are so numerous that joinder of all the members is impracticable. While the precise number of the members of the Class has not been determined, Plaintiffs are informed and believes that there are thousands of individuals meeting the Class definition. Defendant has access to data sufficient to identify the members of the Class since they all perform work via the same mobile application and cannot outsource the work without GigSmart's permission.

26. **Adequacy of Representation.** The named Plaintiffs are fully prepared to take all necessary steps to fairly and adequately represent the interests of the Class defined above. Plaintiffs' attorneys are ready, willing, and able to fully and adequately represent the Class and Plaintiffs. Plaintiffs' attorneys are highly experienced in employment Class action litigation. Plaintiffs intend to prosecute this action vigorously.

27. **Common Questions of Law and Fact.** There are predominant common questions and answers of law and fact and a community of interest amongst Plaintiffs and the claims of the Class as follows:

    a.    Class:

        i.    Whether Defendant misclassified Workers as "independent contractors" instead of employees (*e.g.*, whether GigSmart can meet its burden to meet each Prong of California's ABC test and/or its *Borello* test for employment status);

ii.    Whether Defendant failed to reimburse Workers for reasonable business expenses;

iii.    Whether Defendant made unlawful deductions from Workers' wages;

iv.    Whether Defendant properly provided meal and rest breaks to Workers;

v.    Whether Defendant compensated Workers separately for rest breaks;

vi.    Whether Defendant paid Workers all wages when due;

vii.    Whether Defendant provided Workers with compliant wage statements;

viii.    Whether Defendant failed to properly pay Workers overtime;

ix.    Whether Defendant failed to pay Workers a minimum wage for each hour worked; and

x.    Whether Defendant engaged in an unlawful, unfair, and/or fraudulent business practice or act in violation of Business and Professions Code, section 17200 *et seq.* as it relates to Workers.

28.    **Typicality.** Plaintiffs' claims are typical of the claims of all members of the Class because Defendant applied and continues to apply its illegal classification and pay practices to all Workers.

29.    **Superiority of a Class Action.** A Class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is not practicable, and questions of law and fact common to the Class predominate over questions affecting only individual Class Members. Each Class Member has been damaged and is entitled to recovery due to Defendant's conduct described in this Complaint. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judiciary. Plaintiffs are unaware of any difficulties likely to be encountered in this action that would preclude its maintenance as a Class action.

# VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### Failure to Reimburse Expenses—
### Lab. Code, § 2802 and applicable IWC Wage Orders

30.    Plaintiffs incorporate by reference every allegation contained above.

31.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

32.    Workers necessarily incur many types of expenses that Defendant does not reimburse. These include but are not limited to vehicle usage and associated expenses and expenses for uniforms. Further, Defendant does not reimburse Workers for cell phone and related data expenses despite requiring its Workers to use a cell phone in the course of completing their work.

33.    As alleged above, Plaintiffs and the Class incurred business expenses while performing necessary work for Defendant. They were never reimbursed because they were uniformly misclassified as independent contractors.

34.    The California Labor Code, section 2802, and applicable California Wage Orders require that employers reimburse employees for business expenses reasonably incurred. Defendant failed to do so.

35.    Plaintiffs and the Class have been damaged by Defendant's failures in this respect in an amount to be proven at trial.

36.    Plaintiffs and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on Defendant's violations.

## SECOND CAUSE OF ACTION
### Unlawful Deductions From Wages—
### Lab. Code, §§ 221-223 and applicable IWC Wage Orders

37.    Plaintiffs incorporate by reference every allegation contained above.

38.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

39.    Under Labor Code, section 221 it is "unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." This protection extends to deductions for mistakes in employees' work or other non-malicious conduct.

Applicable California Wage Orders further provide that the only circumstances under which an employer can make a deduction from an employee's wages are due to cash shortage, breakage, or loss of equipment if the employer can show that the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

40.    Despite this, Defendant made and continues to make deductions from the wages of its misclassified Workers. Defendant, for example, unlawfully deducts a 3% fee from Workers' wages should they want their wages paid faster.

41.    Additionally, GigSmart retains roughly 20% of the amount paid by its clients for Workers' services.

42.    Plaintiffs and the Class are entitled to recover their damages, penalties, interest, costs, and attorneys' fees based on these violations.

**THIRD CAUSE OF ACTION**
**Failure to Provide Accurate Wage Statements—**
**Lab. Code, § 226 and applicable Wage Orders**

43.    Plaintiffs incorporate by reference every allegation contained above.

44.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

45.    The purpose of Labor Code section 226 is to ensure that employees can determine whether they are being paid their wages in accordance with California law. Under Section 226(h), "[a]n employee may also bring an action for injunctive relief to ensure compliance with this section and is entitled to an award of costs and reasonable attorney's fees."

46.    Defendant violated the above statute by failing to provide a compliant wage statement to its Workers.

47.    Defendant's violations of section 226 and applicable Wage Orders are ongoing and will continue until and unless this Court enters an injunction barring such violations. Therefore, Plaintiffs seek damages and injunctive relief pursuant to Labor Code, section 226, subsections (e) and (g), along with penalties for past violations, including attorneys' fees and costs incurred.

**FOURTH CAUSE OF ACTION**
**Failure to Provide Overtime—**
**Lab. Code, § 510 and applicable Wage Orders**

48.    Plaintiffs incorporate by reference every allegation contained above.

49.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

50.    Labor Code, section 510, and applicable Wage Orders require overtime pay of at least 1.5 times an employee's regular rate of pay for all hours worked over 8 in a day or 40 in a week.

51.    Workers, including Plaintiffs, work well over 8 hours per day and well over 40 hours per week in line with Defendant's expectations and standards as necessary to complete the work assigned to them. Despite this, they receive no overtime pay in violation of California law.

52.    Defendant is liable to Plaintiffs and the Class for unpaid overtime, interest, reasonable attorneys' fees and costs, and any related statutory penalties.

**FIFTH CAUSE OF ACTION**
**Failure to Provide Meal Periods—**
**Lab. Code § 226.7 and applicable Wage Orders**

53.    Plaintiffs incorporate by reference every allegation contained above.

54.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

55.    Under Labor Code, sections 226.7 and 512, as well as applicable IWC Wage Orders, employers must provide a 30-minute uninterrupted, off-duty meal period for each work shift of more than 5 hours. Depending on hours worked, a second meal period may be owed as well. Where an adequate meal period is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

56.    Defendant has no meal or rest policies and they do not record when breaks start or stop. Nor does Defendant provide for uninterrupted meal periods for Workers or make any effort to relieve them of all duties.

57.    Defendant does not pay premium wages in lieu of these breaks as required by law. And Workers have not otherwise waived their entitlement to meal breaks.

58.    As a proximate result of Defendant's unlawful conduct, Plaintiffs and the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

**SIXTH CAUSE OF ACTION**
**Failure to Provide Rest Breaks—**
**Lab. Code, § 226.7 and applicable Wage Orders**

59.    Plaintiffs incorporate by reference every allegation contained above.

60.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the Class.

61.    Pursuant to Labor Code, section 226.7 and 226.2, as well as applicable IWC Wage Orders, employers must provide a 10-minute uninterrupted, off-duty rest break for each work shift of 3.5 hours or more.  During these periods, an employer must relieve the employee of all duties and relinquish all control over how an employee spends their time. Such rest breaks are to be paid. Where a rest break is not provided, employees are entitled to one hour's compensation at their regular rate of pay.

62.    Defendant's pay policies call for pay only for time worked. As such, it fails to provide for rest breaks or, to the extent ever taken, pay Workers for rest break time. Defendant also failed to pay compensation in lieu of these paid breaks.

63.    As a proximate result of Defendant's unlawful conduct, Plaintiffs and the Class sustained damages and are entitled to recover unpaid wages, liquidated damages, interest, applicable penalties, attorneys' fees, and costs.

**SEVENTH CAUSE OF ACTION**
**Failure to Pay Wages When Due—**
**Lab. Code, §§ 201-203 and applicable Wage Orders**

64.    Plaintiffs incorporate by reference every allegation contained above.

65.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and all members of the Class who are no longer working for Defendant.

66.    Defendant failed to pay all wages due, including the above-mentioned missing wages that went unreimbursed and wages illegally deducted from earnings, upon separation of employment

1  as required by Labor Code sections 201 through 203. As such Plaintiffs and other former Workers

2  in the Class are owed penalties in amount up to 30 days' wages.

3      67.    Defendant's actions in this respect were willful within the meaning of Labor Code,

4  section 203, entitling Plaintiffs and the Class Members to recover waiting time penalties. Defendant

5  failed to pay the above wages pursuant to its standard policies and procedures not to provide

6  employment protections to Workers. Defendant knowns or should know Workers are misclassified

7  as independent contractors. Defendant is represented by sophisticated counsel with a deep

8  understanding of California law who surely understand Defendant cannot meet its burden to prove

9  Workers are independent contractors.

10     68.    Plaintiffs and the Class Members are entitled to recover waiting time penalties and

11  unpaid wages, as well as interest, applicable penalties, attorneys' fees, and costs.

12  **EIGHTH CAUSE OF ACTION**
**Failure to Pay Minimum Wage —**

13  **Lab. Code, §§ 1194, 1194.2, 1197 and applicable IWC Wage Orders**

14     69.    Plaintiffs incorporate by reference every allegation contained above.

15     70.    Plaintiffs bring this cause of action as a Class action on behalf of themselves and the

16  Class.

17     71.    Labor section 1197 makes it unlawful to pay an employee less than the minimum

18  wage, as established by the Industrial Welfare Commission, for each hour worked.

19     72.    Labor section 1194 entitles an employee receiving less than the minimum wage to

20  recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon,

21  reasonable attorneys' fees, and costs of suit.

22     73.    Labor section 1194.2 entitles an employee receiving less than the minimum wage to

23  recover liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.

24     74.    Defendant frequently compensates its Workers at less than the minimum wage for

25  each hour they work. For example, if a Worker reports to their gig but Defendant's clients determine

26  the work is not needed, the worker is not paid. Similarly, if a Worker is late, they may be relieved

27  of duties with no payment. Defendant and its clients may edit the start and stop times for a shift at

28  any time, which results in shifts being cut short or otherwise not available for the scheduled hours.

75.    As a result of Defendant's improper pay policy and/or practices, as described herein, Defendant failed to pay Plaintiffs and other Class Members the minimum wage that these Workers were entitled to, for each hour worked, under Labor Code section 1197 and applicable Wage Orders.

76.    Plaintiffs are informed and believe, and based thereon allege, that Defendant's failure to pay the minimum wage for each hour worked, as described herein, was done willfully.

77.    Additionally, as a result of Defendant's failure to pay Plaintiffs and other misclassified Workers the minimum wages for all hours worked, these Workers were not timely paid all earned wages as required by Labor Code section 204.

78.    Based on Defendant's conduct, as alleged herein, Defendant is liable to the Class Members, including Plaintiffs, for unpaid minimum wage compensation pursuant to California Labor Code sections 1194 and 1197, and applicable IWC Wage Orders, liquidated damages in an amount equal to the unpaid wages owed to such employees, plus interest, pursuant to California Labor Code sections 1194.2, and attorneys' fees and costs of suit, pursuant to California Labor Code sections 1194 and 1194.2.

## NINTH CAUSE OF ACTION
### Unfair Business Practices—
### Bus. & Prof. Code, § 17200 et seq.

79.    Plaintiffs incorporate by reference every allegation contained above.

80.    Defendant knowingly and willfully engaged in the unlawful practices described above, which include but are not limited to:

    a.    Intentionally misclassifying its employee Drivers as "independent contractors;"

    b.    Imposing unreimbursed business expenses on misclassified employees;

    c.    Imposing unlawful deductions on misclassified employees;

    d.    Failing to pay overtime to Worker employees;

    e.    Failing to pay Workers for each hour worked;

    f.    Failing to provide adequate meal and rest breaks to Workers;

1          g.      Failing to pay wages when due; and

2          h.      Failing to provide accurate pay statements to Workers.

3      81.      Defendant intended to, and did, profit from these illegal acts.

4      82.      As a direct and proximate result of the above, Plaintiffs and the Class Members have
5 lost money or property, thereby entitling these individuals to restitution.

6      83.      Pursuant to the Business and Professions Code, Plaintiffs and the Class Members are
7 entitled to restitution of money or property acquired by Defendant by means of such unlawful
8 business practices, in amounts not yet known, but to be ascertained at trial.

9      84.      Pursuant to the Business and Professions Code, the Class and the public are also
10 entitled to injunctive relief against Defendant's ongoing continuation of such unlawful business
11 practices, including public injunctive relief. Plaintiffs seek such public injunctive relief here
12 prohibiting Defendant from continuing its illegal practice of misclassifying Workers, including
13 Plaintiffs, and denying them of important wage laws.

14      85.      If Defendant is not enjoined from engaging in the unlawful business practices
15 described above, Plaintiffs, Class Members, and the public will be irreparably injured. The exact
16 extent, nature, and amount of such injury is difficult to ascertain now.

17      86.      The Class, including Plaintiffs, have no plain, speedy, and adequate remedy at law.

18      87.      Defendant will continue to engage in the unlawful business practices described above
19 in violation of the Business and Professions Code, in derogation of the rights of Plaintiffs, the Class,
20 and of the public, if not enjoined by this Court.

21      88.      The success of Plaintiffs in this action will result in the enforcement of important
22 rights affecting the public interest by conferring a significant benefit upon the public.

23      89.      Private enforcement of these rights is necessary as no public agency has pursued
24 enforcement. There is a financial burden incurred in pursuing this action, and it would be against the
25 interests of justice to require the payment of attorneys' fees from any recovery in this action.
26 Plaintiffs are therefore entitled to an award of attorneys' fees and costs of suit under the "common
27 fund," "substantial benefit," and other important doctrines.

28

**TENTH CAUSE OF ACTION**
**Violation of PAGA; Enforcement of PAGA—**
**Labor Code § 2698, et seq.**

90.    Plaintiffs incorporate by reference every allegation contained above.

91.    PAGA permits aggrieved employees, like Plaintiffs, to recover civil penalties for violations of numerous Labor Code sections. *See* Labor Code § 2699.5. Plaintiffs seek to recover representative PAGA penalties stemming from Defendant's Labor Code violations occurring to others (*i.e.*, non-individual PAGA penalties) as enumerated above and below occurring during the relevant PAGA period (one year prior to their PAGA letter to the LWDA plus any applicable tolling). By misclassifying Workers (or similarly titled individuals) as independent contractors over this period, Defendant willfully misclassified them and failed to comply with various Labor Code provisions.

92.    Defendant's conduct, as alleged above, violates numerous sections of the California Labor Code, including, but not limited to, the following:

a.    Labor Code sections 201, 202, 203, 204, 210, 216, 225.5, and 223 for failure to timely pay Plaintiffs and other aggrieved employees all earned wages;

b.    Labor Code sections 223, 1194, 1194.2, 1197, 1197.1, and 1199 for failure to pay Plaintiffs and other aggrieved employees all mandatory minimum wages;

c.    Labor Code sections 510, 558, and 1198, for failure to compensate Plaintiffs and other aggrieved employees with all required overtime pay;

d.    Labor Code sections 226 and 226.3, for failure to provide accurate wage statements to Plaintiffs and other aggrieved employees;

e.    Labor Code sections 226.2, 226.7, 512, and 558 for failure to provide meal periods and rest periods to Plaintiffs and other aggrieved employees;

f.    Labor Code section 226.8, for willful misclassification of Plaintiffs and other aggrieved employees;

g.    Labor Code section 432.5, for requiring Plaintiffs and other aggrieved employees to agree to terms in writing known to be prohibited by law, including the agreement between Plaintiffs and other aggrieved employees

and Defendant that allows failure to reimburse Plaintiffs and other aggrieved employees for business expenses reasonably incurred;

h.    Labor Code section 1174, for failure to maintain accurate employment records related to Plaintiff and other aggrieved employees' work;

i.    Labor Code section 1194.5, for Defendant's violations as described herein;

j.    Labor Code section 1198, for Defendant's employment of Plaintiffs and other aggrieved employees for longer than the maximum hours and violative of the standard conditions of labor fixed by the Industrial Welfare Commission;

k.    Labor Code sections 221-223, for Defendant's unlawful deductions from the wages of Plaintiffs and other aggrieved employees'; and

l.    Labor Code section 2802, for failure to reimburse employees for business expenses reasonably incurred.

93.    Plaintiffs have complied with all administrative requirements and pre-conditions contained with California Labor Code Section 2699.3. Plaintiffs notified the California Labor Workforce Development Agency ("LWDA") on December 18, 2023 and waited the prescribed period. Plaintiffs have not received any response from the LWDA.

94.    Pursuant to PAGA and California Labor Code sections 2699, 2699.3, and 2699.5, Plaintiffs are entitled to and hereby seeks civil penalties against GigSmart, in addition to reasonable attorney fees and costs, on behalf of themselves and all others similarly-aggrieved current and former employees for violations of the Labor Code sections referred to in this Class Action Complaint.

## VII.    **PRAYER FOR RELIEF**

Plaintiffs pray for judgment against Defendant, as follows:

1.    For an order certifying the Class as described herein, appointing Plaintiffs as Class representatives, and their counsel as Class counsel;

2.    For compensatory damages according to proof;

3.    For enhanced damages, liquidated damages, and penalties as permitted under prevailing law;

4.    For civil penalties according to proof;

1    5.    For pre-judgment and post-judgment interest where allowable;

2    6.    For costs of suit;

3    7.    For injunctive relief, including public injunctive relief, as described herein;

4    8.    For restitution as described herein;

5    9.    For punitive damages, where appropriate;

6    10.    For reasonable attorneys' fees and costs; and

7    11.    For such other and further relief as this Court may deem just and proper.

8                    VIII.    **DEMAND FOR JURY TRIAL**

9    Plaintiffs demand a trial by jury on all issues so triable.

10

11    Respectfully submitted:

12    Dated: March 1, 2024                **NICHOLAS & TOMASEVIC, LLP**

13

14                            By:

15                            Craig M. Nicholas (SBN 178444)
                             Shaun Markley (SBN 291785)
16                            Jordan Belcastro (SBN 339570)
                             225 Broadway, 19th Floor
17                            San Diego, CA 92101
                             Tel: (619) 325-0492
18                            Fax : (619) 325-0496
                             Email: cnicholas@nicholaslaw.org
19                            Email: smarkley@nicholaslaw.org
                             Email: jbelcastro@nicholaslaw.org
20
                             Attorneys for Plaintiffs SUSAN JOHNSON and
21                            CHRISTI MCCRACKEN, individuals, on behalf of
                             themselves and all others similarly situated
22

23

24

25

26

27

28

# EXHIBIT B

**EXHIBIT B**

 **Superior Court of Alameda County Public Portal**

---

**24CV066123** MCCRACKEN, et al. vs GIGSMART, INC.

**Civil Unlimited** (Other Employment Complaint Case)

Rene C. Davidson Courthouse / DEPT 21 - HON. Noël Wise

Filed: 03/01/2024

Next Hearing: 03/03/2025 Initial Case Management Conference

Upload Document

Document Download    Pay Fees

Case Summary

Register of Actions    Participants    Future Hearings

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 03/01/2024 | Complaint<br>Filed by: CHRISTI MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff)<br>As to: GIGSMART, INC. (Defendant) | Document | ⬇ |
| 03/01/2024 | Summons on Complaint<br>Issued and Filed by: CHRISTI MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff)<br>As to: GIGSMART, INC. (Defendant) | Document | ⬇ |
| 03/01/2024 | Civil Case Cover Sheet<br>Filed by: CHRISTI MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff)<br>As to: GIGSMART, INC. (Defendant) | Document | ⬇ |
| 03/01/2024 | Notice of Case Management Conference<br>Filed by: Clerk | Document | ⬇ |
| 03/01/2024 | Complex Determination Hearing scheduled for 04/03/2024 at 01:30 PM in Rene C. Davidson Courthouse at Department 21 | Event | |
| 03/01/2024 | Initial Case Management Conference scheduled for 07/02/2024 at 08:30 AM in Rene C. Davidson Courthouse at Department 21 | Event | |
| 03/01/2024 | The case is placed in special status of: Provisionally Complex – Case Type | Case | |
| 03/01/2024 | The case is placed in special status of: Class Action | Case | |
| 03/01/2024 | Case assigned to Hon. Noël Wise in Department 21 Rene C. Davidson Courthouse | Assignment | |
| 03/20/2024 | Tentative Ruling Published for 04/03/2024 1:30 PM Complex Determination Hearing} | Tentative Ruling | |
| 04/03/2024 | Initial Case Management Conference Order<br>Issued and Filed by: Clerk | Document | ⬇ |
| 04/03/2024 | Initial Case Management Conference scheduled for 03/03/2025 at 01:30 PM in Rene C. Davidson Courthouse at Department 21 | Event | |
| 04/03/2024 | The case is placed in special status of: Deemed Complex | Case | |
| 04/03/2024 | Updated -- Initial Case Management Conference Order:<br>Status changed from Issued and Filed to Signed and Filed | Document | ⬇ |



| Date | Message | Category | Download |
|------|---------|----------|----------|
| 04/03/2024 | Minute Order (Complex Determination Hearing filed by CHRISTI MCCRACKEN (Pla...) | Minute Order | ⬇ |
| 04/03/2024 | Order re: Complex Determination Hearing filed by CHRISTI MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff) on 03/01/2024 Signed and Filed by: Court | Document | ⬇ |
| 04/03/2024 | Complex Determination Hearing scheduled for 04/03/2024 at 01:30 PM in Rene C. Davidson Courthouse at Department 21 updated: Result Date to 04/03/2024 Result Type to Held | Event | |
| 04/03/2024 | Initial Case Management Conference scheduled for 07/02/2024 at 08:30 AM in Rene C. Davidson Courthouse at Department 21 Not Held - Rescheduled by Court was rescheduled to 03/03/2025 01:30 PM | Event | |
| 04/04/2024 | Proof of Service by Substituted Service Filed by: CHRISTI MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff) As to: GIGSMART, INC. (Defendant) Service Cost Waived: No Service Cost: 70.00 Proof of Mailing Date: 04/02/2024 | Document | ⬇ |
| 04/04/2024 | Proof of Service (not Summons and Complaint) Filed by: CHRISTI MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff) As to: GIGSMART, INC. (Defendant) | Document | ⬇ |

Copyright © Journal Technologies, USA. All rights reserved.

**FILED**
Superior Court of California
County of Alameda

04/03/2024

Chad Finke, Executive Officer / Clerk of the Court

By: _Nicole Hall_ Deputy
N. Hall

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

| | |
|---|---|
| , <br> Plaintiffs | Case No. <br><br> INITIAL CASE MANAGEMENT ORDER |
| , <br> Defendants | ASSIGNED FOR ALL PRE-TRIAL PURPOSES TO: <br> JUDGE NOËL WISE <br> DEPARTMENT 21 |

The following order shall apply to all parties in this action:

## CASE MANAGEMENT CONFERENCES

At Case Management Conferences (CMCs), the Court will address discovery issues, schedules, and other subjects pursuant to CRC 3.750. Counsel attending CMCs must be thoroughly familiar with the case. The Court permits remote CMC appearances by video conference. Parties are to meet and confer in advance of the CMC regarding the form of their appearance. The Court prefers all speaking participants for all parties to participate from the same platform, i.e., all speaking participants should be prepared to attend either by videoconference or in person. (The Court does not have a preference re the manner of attendance of non-speaking participants.)

At the Initial CMC, the parties must be prepared to discuss the nature of the case, both factually and legally, as well as the projected management of the case at each stage, including the prospective use of lead counsel and a common complaint. The CMC is not

1

a perfunctory hearing. The primary objective of the CMC is to develop a comprehensive plan for a just and efficient determination of the litigation.

Courtesy copies of all CMC statements must be emailed to dept21@alameda.courts.ca.gov and must also be delivered in hard copy directly to Dept. 21 if they exceed five pages. The filing and delivery date is not later than fifteen (15) days before the CMC unless otherwise directed.

The Parties shall prepare and file a joint CMC statement, prepared in narrative form (not using Form CM-110), after counsel have met and conferred in person or via telephone or videoconference as required by CRC 3.724. Written or emailed exchanges do not meet the Court's good faith meet and confer requirements.

Initial CMC statements must address the following issues when applicable:

A. A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B. The number of parties and their posture, including a proposed structure of representation (e.g., liaison/lead counsel or by committee);

C. Deadlines and limits on joinder of parties and amended or additional pleadings;

D. Class discovery and class certification, if applicable;

E. A proposed schedule for the conduct of the litigation including, but not limited to a discovery plan, a plan for hearing remaining law and motion, proposed

mediation dates, projected dates for filing motions for class certification (if
applicable), and trial;

F.  An identification of all potential evidentiary issues involving confidentiality or
protected evidence and/or agreement re a related protective order;

G.  A detailed description of the procedural posture of the case, describing any
outstanding procedural problems, including, but not limited to:

(1)  unserved parties and the reasons for the failure to serve;

(2)  unserved and/or unfiled cross-complaints;

(3)  related actions pending in any jurisdiction and the potential for
coordination or consolidation;

(4)  any possible jurisdictional or venue issues that may arise;

(5)  the status of discovery, including a description of all anticipated discovery
and incomplete or disputed discovery issues;

(6)  unresolved law and motion matters;

(7)  requests for, or opposition to, any ADR proceedings, including but not
limited to mediation, judicial or contractual arbitration;

(8)  severance or bifurcation of issues for trial; and

(9)  calendar conflicts for any attorney, witness, or party, and any other matter
which may affect the setting of a trial date.

H.  Counsel may make suggestions for streamlining the litigation, including, but
not limited to, a master file system, common complaints and/or answers,
designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline
service of process and/or management of discovery, the use of e-filing, and

the use of a web-page maintained by lead counsel for the purpose of posting

the litigation schedule and agenda. Counsel may also address ways of

structuring the trial of the action such as bifurcation, severance, bell-weather

trials, use of special masters, use of expedited jury procedures and/or waiver

of jury.

I.  If the action is a Judicial Council Coordinated Proceeding (JCCP), the initial

CMC statement must also include a list of cases that the parties agree should

be coordinated within the JCCP. The list may be supplemented in later CMC

statements as additional cases are added to the JCCP through stipulation or

otherwise. (CRC 3.544.)

Parties are advised to check the Court's register of actions before appearing at any

CMC, including the Initial Case Management Conference, to determine if the Court has

issued an order, or a tentative case management order. The Court will endeavor to issue

tentative case management orders (TCMOs) at least two days before the CMC. If a

TCMO is published, it will become the order of the Court unless counsel or self-

represented party notifies the Court and opposing counsel/self-represented party by email

and through eCourt prior to 3:00 p.m. the court day before the CMC that they wish to

appear at the CMC to discuss or contest some aspect of the order. Parties may not contest

a TCMO until they have met and conferred in good faith and in person (or via video or

telephone conference) concerning the potential areas of dispute or discussion. If

subsequent agreement is not reached, the request to appear sent to the Court must, in a

non-argumentative manner, succinctly detail the meet and confer efforts, the topics the

parties wish to discuss, and the parties' respective positions. (Please note that the

4

Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display TCMOs. The TCMOs are found in the Register of Action.) Department 21 may be reached at Dept21@alameda.courts.ca.gov.

### MOTIONS FOR CLASS CERTIFICATION

Plaintiffs are expected to file their motion for class certification no later than 13 months after filing the complaint. Parties are to include related updates in their initial and supplemental CMC statements.

### NOTICE OF FEE CHANGES - JURY TRIAL FEE

The advance jury fee is fixed at $150.00 and is not refundable. With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. (C.C.P. § 631(b).)

### DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the Court until after an informal discovery conference pursuant to revised Local Rule 3.31 (amended effective January 1, 2023). A party may request an IDC by joint email to dept21@alameda.courts.ca.gov. Any IDC request must include a succinct, non-argumentative narration of the parties' good faith meet and confer efforts (in person, or via video or telephone conference), and the remaining areas of disagreement. The IDC is not a pro forma step before a motion. Parties are to continue their in person meet and confer efforts after the submission of their IDC statements. Parties are to email the Court with their request to withdraw the IDC or narrow the issues to be discussed prior to 9:00 a.m. on the date of the IDC.

### EMAILS TO COURT

5

Emails to the Court are not part of the Court record in this case and may be deleted without notice. Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 21 email may only be used for the following purposes: to seek a reservation to schedule a proceeding on the Court's calendar, to give notice that a settlement has been reached, to request that a motion be withdrawn, to request an IDC (and transmit IDC statements), to notify the Court of emergency scheduling issues (i.e. running late to a hearing), to contest a tentative ruling, to reply to an inquiry from the clerk or research attorney of Department 21, to communicate with the courtroom clerk regarding department 21 procedures (that are not otherwise addressed in this order, the local rules, or on the Department or Court web site), to deliver courtesy copies fewer than 5 pages in length (including all attachments), or to communicate re other matters that the Court has expressly authorized in this case.

If any email communications to the Court include ex parte communications, attempt to argue issues not properly noticed, or are rude or unprofessional, then the clerk will not pass on the communication to the Court, and it will not be considered. However, improper communications may be the subject of sanctions ordered sua sponte by the Court, or after consideration of a noticed motion. The Court may also sua sponte file in the register of action any email communications transmitted to the Court by a party or counsel.

## PRO HAC VICE PROCESS

Applications for Pro Hac Vice must be submitted by noticed motion on regular time, or, if it is a time sensitive matter, a request for an order shortening time must be submitted. Applications will not be considered on an ex parte basis. (CRC 9.40.)

6

## NOTICE

Parties are advised that CASE MANAGEMENT ORDERS, including trial setting orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 21 will be published in the Court's website in the Register of Action for this case. The clerk of the Court WILL NOT serve each party a copy of future orders. Unless otherwise ordered, counsel must obtain copies of all future orders from the Register of Action in this case.

## SERVICE OF THIS ORDER

Counsel for plaintiff(s) has a continuing obligation to serve a copy of this order on newly joined parties not listed on the proof of service of this order and file proof of service. Each party defendant joining any third-party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service. The Court directs the clerk to serve a copy of this CASE MANAGEMENT ORDER upon counsel for Plaintiff(s).

DATED: 04/03/2024

NOËL WISE, JUDGE
**Noël Wise / Judge**

---

## CLERK'S CERTIFICATE OF SERVICE

I certify that I am not a party to this cause and that a true and correct copy of the foregoing document was mailed first class, postage prepaid, in a sealed envelope, addresses shown below, and that the

7

mailing of the foregoing and execution of this certificate occurred at 1225 Fallon Street, Oakland, California.

Executed: 04/03/2024

*Nicole Hall*

Courtroom Clerk, Dept. 21

N. Hall, Deputy Clerk

8

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/03/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Nicole Hall_ Deputy<br>N. Hall |
| PLAINTIFF/PETITIONER:<br>CHRISTI MCCRACKEN  et al | |
| DEFENDANT/RESPONDENT:<br>GIGSMART, INC. | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV066123 |

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the **Initial Case Management Conference Order** entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.

Shaun Andrew Markley
Nicholas & Tomasevic, LLP
smarkley@nicholaslaw.org

Chad Finke, Executive Officer / Clerk of the Court

By:

_Nicole Hall_

N. Hall, Deputy Clerk

Dated: 04/03/2024

**CERTIFICATE OF ELECTRONIC SERVICE
CODE OF CIVIL PROCEDURE 1010.6**

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

| | |
|---|---|
| CHRISTI MCCRACKEN  et al<br>Plaintiff/Petitioner(s)<br>vs.<br>GIGSMART, INC.<br>Defendant/Respondent<br>(s) | No.    24CV066123<br><br>Date:   04/03/2024<br>Time:   1:30 PM<br>Dept:   21<br>Judge:  Noël Wise<br><br>ORDER re: Complex Determination<br>Hearing filed by CHRISTI<br>MCCRACKEN (Plaintiff);<br>SUSAN JOHNSON<br>(Plaintiff) on 03/01/2024 |

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court,

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Alameda Superior Court, within 10 days of service of this order.

Order has been filed.

Plaintiff must file a motion for class certification prior to the March 3, 2025, hearing.

The parties shall, no later than 15 calendar days before the next case management hearing, file a joint case management statement on pleading paper.

The Initial Case Management Conference scheduled for 07/02/2024 is continued to 03/03/2025 at 01:30 PM in Department 21 at Rene C. Davidson Courthouse .

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

Dated :  04/03/2024

**Noël Wise / Judge**

---

ORDER re: Complex Determination Hearing filed by CHRISTI MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff) on 03/01/2024

Page 2 of 3

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

---

ORDER re: Complex Determination Hearing filed by CHRISTI
MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff) on
03/01/2024

| **SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/03/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _Nicole Hall_ Deputy<br>N. Hall |
| PLAINTIFF/PETITIONER:<br>CHRISTI MCCRACKEN  et al | |
| DEFENDANT/RESPONDENT:<br>GIGSMART, INC. | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV066123 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order re: Complex Determination Hearing filed by CHRISTI MCCRACKEN (Plaintiff); SUSAN JOHNSON (Plaintiff) on 03/01/2024 entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Shaun Andrew Markley
Nicholas & Tomasevic, LLP
smarkley@nicholaslaw.org

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/03/2024

By:

_Nicole Hall_

N. Hall, Deputy Clerk

**CERTIFICATE OF ELECTRONIC SERVICE
CODE OF CIVIL PROCEDURE 1010.6**

POS-040

# INFORMATION SHEET FOR PROOF OF SERVICE—CIVIL

*(This information sheet is not part of the official proof of service form and does not need to be copied, served, or filed.)*

**USE OF THIS FORM**

This form is designed to be used to show proof of service of documents by (1) personal service, (2) mail, (3) overnight delivery, (4) messenger service, or (5) fax.

This proof of service form should **not** be used to show proof of service of a summons and complaint. For that purpose, use *Proof of Service of Summons* (form POS-010).

Also, this proof of service form should **not** be used to show proof of electronic service. For that purpose, use *Proof of Electronic Service* (form POS-050).

Certain documents must be personally served. For example, an order to show cause and temporary restraining order generally must be served by personal delivery. You must determine whether a document must be personally delivered or can be served by mail or another method.

**GENERAL INSTRUCTIONS**

A person must be over 18 years of age to serve the documents. The person who served the documents must complete the Proof of Service. **A party to the action cannot serve the documents**.

The Proof of Service should be typed or printed. If you have Internet access, a fillable version of this proof of service form is available at *www.courts.ca.gov/forms.htm*.

*Complete the top section of the proof of service form as follows:*

First box, left side: In this box print the name, address, and telephone number of the person for whom you served the documents.

Second box, left side: Print the name of the county in which the legal action is filed and the court's address in this box. The address for the court should be the same as the address on the documents that you served.

Third box, left side: Print the names of the plaintiff/petitioner and defendant/respondent in this box. Use the same names as are on the documents that you served.

Fourth box, left side: Check the method of service that was used. You should check only one method of service and should show proof of only one method on the form. If you served a party by several methods, use a separate form to show each method of service.

First box, top of form, right side: Leave this box blank for the court's use.

Second box, right side: Print the case number in this box. The case number should be the same as the case number on the documents that you served.

Third box, right side: State the judge and department assigned to the case, if known.

*Complete items 1–6:*

1. You are stating that you are over the age of 18.

2. Print your home or business address.

3. If service was by fax service, print the fax number from which service was made.

4. List each document that you served. If you need more space, check the box in item 4, complete the *Attachment to Proof of Service—Civil (Documents Served)* (form POS-040(D)), and attach it to form POS-040.

5. Provide the names, addresses, and other applicable information about the persons served. If more than one person was served, check the box on item 5, complete the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)), and attach it to form POS-040.

6. Check the box before the method of service that was used, and provide any additional information that is required. The law may require that documents be served in a particular manner (such as by personal delivery) for certain purposes. Service by fax generally requires the prior agreement of the parties.

**You must sign and date the proof of service form. By signing, you are stating under penalty of perjury that the information that you have provided on form POS-040 is true and correct.**

---

POS-040 [Rev. January 1, 2020]

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

Page 3 of 3

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form |

Clear this form

POS-040

| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO: | FOR COURT USE ONLY |
|---|---|
| NAME: Shaun Markley (SBN 291785) | |

FIRM NAME: NICHOLAS & TOMASEVIC, LLP
STREET ADDRESS: 225 Broadway, 19th Floor
CITY: San Diego              STATE: CA    ZIP CODE: 92101
TELEPHONE NO.: (619) 325-0492    FAX NO.: (619) 325-0496
E-MAIL ADDRESS: smarkley@nicholaslaw.org
ATTORNEY FOR (name): Plaintiffs SUSAN JOHNSON and CHRISTI MCCRACKEN, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: René C. Davidson Courthouse

Plaintiff/Petitioner: SUSAN JOHNSON and CHRISTI MCCRACKEN, et al.

Defendant/Respondent: GIGSMART, INC.

| | |
|---|---|
| | CASE NUMBER: 24CV066123 |
| **PROOF OF SERVICE—CIVIL** | |
| **Check method of service (only one):** | JUDICIAL OFFICER: Hon. Noël Wise |
| ☐ By Personal Service   ☒ By Mail   ☐ By Overnight Delivery | DEPARTMENT: 21 |
| ☐ By Messenger Service   ☐ By Fax | |

*Do not use this form to show service of a summons and complaint or for electronic service.*
*See USE OF THIS FORM on page 3.*

1. At the time of service I was over 18 years of age **and not a party to this action**.

2. My residence or business address is:

   225 Broadway, 19th Floor, San Diego, CA 92101

3. ☐  The fax number from which I served the documents is *(complete if service was by fax):*

4. On *(date):* 4/4/2024          I served the following **documents** *(specify):*
   (1) General Order re: Complex Determination Hearing; (2) Initial Case Management Order

   ☐ The documents are listed in the *Attachment to Proof of Service–Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a. Name of person served: c/o Vincent Catino, Agent for Service of Process for GIGSMART, INC.
   b. ☒ *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
      Business or residential address where person was served:
      999 18th Street, Suite 1750S, Denver, CO 80202

   c. ☐ *(Complete if service was by fax.)*
      Fax number where person was served:

   ☐ The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*
   a. ☐ **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and eight in the evening.

Page 1 of 3

**PROOF OF SERVICE—CIVIL**
**(Proof of Service)**

**POS-040**

| CASE NAME:<br>CHRISITI MCCRACKEN, et al. v. GIGSMART, INC. | CASE NUMBER:<br>24CV066123 |
|---|---|

6. b. ☒ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

(1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

(2) ☒ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):*

c. ☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 4/4/2024

Ryan Dilworth
_____
(TYPE OR PRINT NAME OF DECLARANT)          ▶          _____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

**DECLARATION OF MESSENGER**

☐ **By personal service.** I personally delivered the envelope or package received from the declarant above to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and eight in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: _____

_____
(NAME OF DECLARANT)          ▶          _____
(SIGNATURE OF DECLARANT)